JOHN T. ROCKWOOD & others *vs.* WILLIAM W. WILSON & others.

Where one properly opens a covered drain upon his own land, which it becomes his duty to close again, in order to prevent the water from setting back and overflowing the adjoining land, he is bound to use ordinary care and prudence in closing such drain, and if he does so, he is not responsible for any damage to his neighbor's land caused by the sudden overflow of such drain.

THIS was an action of tort, alleging in substance that the defendants, in excavating a cellar on their own land, opened a covered ditch or drain to a stream of water on the easterly side of Main street, in Springfield, and negligently left said ditch or drain open and unobstructed, so that the water flowed from said stream up said ditch or drain, and into and across the defendants' cellar, thence through an adjoining cellar into the basement of the plaintiffs' store, to the injury of the same, and the goods therein.

At the trial before *Metcalf*, J. it appeared that on the 25th of March, 1852, John Mills leased to the plaintiffs the southerly part of a lot on the west side of Main street, Springfield, to

19 *

erect a dry goods store upon.  Soon afterwards he leased to Hutchinson and company the middle part of the lot.  Both lessees proceeded to erect stores, and about the 1st of October the plaintiffs filled their store, including the basement, with dry goods, and opened it for trade.  On the 13th of November, Mills contracted to sell to the defendants a lot adjoining the lot of Hutchinson and company, on the north, and on the 15th of November gave them a warranty deed of the same.  The defendants, on the same day, employed men, and commenced clearing out the earth and rubbish, and laying the foundation of a store.  On the east side of Main street, under the sidewalk, is the town brook, so called, running through a channel, walled up and covered.  And from the northerly part of the aforesaid lot was a drain running into the town brook.  At the point where it entered said lot, it was so near to a level with the brook that a slight rise of water would cause it to set back upon the lot, unless the drain was kept closed.  It became necessary for the defendants to break down the drain in order to lay their foundation; and both before and after they did this, they were cautioned that it would be necessary to close it again to prevent the water from flowing back into the cellar.  After leaving it open several days, they caused it to be closed on the 26th, by filling it with brick, mortar, and sand.  But it had already begun to rain, and continued to rain through the day and night; and in the course of the night the water broke through the obstructions, filled the cellar, and from thence flowed through the cellar of Hutchinson and company, and into the basement of the plaintiffs' store, and did great damage to the plaintiffs building and stock of goods.  The plaintiffs contended that, though the defendants had a right to suffer the water to flow back into their own grounds, yet they had no right to leave their cellar in such condition that the water would escape from theirs into the plaintiffs' premises, and that it was negligence to do so.  But the judge instructed the jury that the defendants were bound to use only ordinary care in stopping the drain, and that if they used such care, that is, such care and caution as men of common prudence usually exercise in the

management of their own concerns, they were not liable to the plaintiffs for the injury occasioned to them. The jury found a verdict for the defendants ; and the plaintiffs excepted to the foregoing ruling and instruction.

*R. A. Chapman,* for the plaintiffs. This is an action against the defendants for opening a watercourse across their own land, and neglecting to close the same, and by means of the watercourse, conducting the water of a stream into the basement of the plaintiffs' store, filled with dry goods. The plaintiffs contend that even if the parties had been riparian proprietors, the defendants would have had no right to turn the water upon the plaintiffs' land. Much less had they a right to turn it upon the land of one who was not a riparian proprietor, but whose land was separated from the stream by the width of the street. They are liable for causing the store to be inundated in this manner, whether their act were done wilfully or by any degree of negligence, and it is not necessary for the plaintiffs to show a want of ordinary care. The following examples from Comyn's Digest, Action upon the case for Nuisance, A., are in point : " If a man builds a house hanging over the house of another, whereby the rain falls upon it." " If a man fixes a spout to his own house whence the rain falls into the yard of another, and hurts the foundation of his house." " So if he stop a watercourse whereby land is overflowed." But if he may not throw water upon my premises by elevating his roof, or fixing his spout, or stopping a watercourse, he may not inundate my store by digging a cellar and opening a ditch from a stream, and conducting the stream back upon me. Most of the cases in the books respecting the turning of water upon a neighbor's land, occurred between riparian proprietors, and the principle is stated and discussed in Angell on Watercourses, *c.* 9, § 340 *& seq.* Certainly the owner of a store is as much protected as the owner of a mill, and one whose land is not on the stream should be as thoroughly protected against inundation, by means of artificial ditches, as a riparian proprietor. In *Cooper* v. *Barber,* 3 Taunt. 99, one who brought water by a ditch across his own land, and suffered it to injure his neigh-

bor by percolation, was held liable. In *Sutton* v. *Clarke*, 6 Taunt. 29, which was against commissioners who were public officers, they were held not liable without proof of negligence. Gibbs, C. J. says: " This case is perfectly unlike that of an individual who, for his own benefit, makes an improvement on his own land according to his best skill and diligence, and not foreseeing it will produce injury to his neighbor; if he thereby unwittingly injures his neighbor, he is answerable." Such is the present case. *The King* v. *Trafford*, 1 Barn. & Ad. 874. One who changes the course of a stream, even in times of freshet, for his own benefit, is absolutely liable to indictment for an injury to the public, and want of ordinary care need not be proved. The rights of adjoining proprietors are well discussed in two recent cases in New York. *Hay* v. *Cohoes Co.* 2 Comst. 159; *Tremain* v. *Same.* 2 Comst. 163. In the first case the remark of the court, that the defendants " could not pollute the air on the plaintiff's premises, nor abstract any portion of the soil, nor cast any thing upon the land by any act of their agents, neglect or otherwise," applies directly to this case. In the last case, evidence that the defendant's work was done in the most careful manner was held to be irrelevant. True; the declaration did not in that case state whether the injury was done wilfully or negligently; and our declaration alleges that the defendants opened a ditch and negligently left it open. But our declaration merely prevents us from proving a case of wilfulness, and does not excuse a negligence that would otherwise be inexcusable. In *Shaw* v. *Cummiskey*, 7 Pick. 76, the absolute liability of the defendant for turning water upon the plaintiff's land is admitted. In that case it was done wilfully, but if it had been done by any negligence of the defendant or his servants, however slight, the defendant's liability would have been the same. In *Burgess* v. *Gray*, 1 Man. Grang. & Sc. 578, the defendant was held absolutely liable without proof of want of ordinary care. Yet in that case the defendant had a license to make his ditch; but negligently left earth in the highway over which the plaintiff was passing, and whereby he was injured. The principle on which that case rests, must sustain

this case. *Williams* v. *Gale*, 3 Har. & J. 231, also sustains this case.

The right to enjoy one's building free from inundations of water, is as absolute as the right to enjoy the air free from impurity. In *Rich* v. *Basterfield*, 2 Car. & Kirwan, 257, which was case for rendering the air impure by the smoke of buildings, it was held that the plaintiff had an absolute right to enjoy pure air about his house, and proof of want of ordinary care was not held necessary to maintain the action.

If this action does not lie without proving want of ordinary care, the plaintiffs live in constant peril. This may be illustrated by a fact which has actually occurred. During a freshet which occurred but a few weeks since, the plaintiffs discovered water several inches deep under their basement floor, and found it came through this same ditch which had broken open. This timely discovery prevented another injury like that for which the action is brought. Now if the plaintiffs were to apply for an injunction against the defendants, we submit that the terms of the injunction following the legal rights of the parties, would be absolute, that the defendants should not inundate the plaintiffs' store, and not merely that they should refrain from carelessness. In *Walter* v. *Selfe*, 4 De Gex & Smale, 315, the defendant was absolutely enjoined from burning brick, by which act he had destroyed the purity of the air on the plaintiff's grounds, and not merely enjoined to the use of ordinary care, but against the burning which created the smoke.

In the present case there is no pretence that the defendants have used any care whatever to prevent the water from running from their land to the plaintiffs' basement. Their own cellar was cleared out by them and operates as a spout to conduct the water, which comes to them, upon the plaintiffs' buildings. Yet it was held that they were not bound to use any such care, or to take any precautions to keep the water from flowing out of their own cellar into the plaintiffs' basement, but merely to use ordinary care in closing a ditch which they themselves had opened. It is respectfully submitted that this ruling is not sustained by the authorities, and is not in accordance with the legal rights of the parties.

*G. Ashmun & H. Vose,* for the defendants.

THOMAS, J. The gravamen of the suit is the negligence of the defendants. The defendants did what being done with due care was a lawful act, upon their own land. It is not the opening of the drain of which the plaintiffs complain. The case finds that this was necessary; that the foundation of the defendants' building could not be laid without it. The caution given to the defendants was not that they should not open the drain, but that it would be necessary to close it. This the declaration avers the defendants failed to do, "and negligently left said ditch or drain open, and unobstructed so that the water flowed, &c."

It is not necessary to consider whether, negligence being averred, the action could proceed without proof of negligence. The technical ground might be sufficient, but we do not rest upon it, being all satisfied that it is only upon proof of negligence that the action could be maintained under any form of declaration. The case is not that of the erection or maintenance of a *private nuisance*—the doing of an unlawful act—but the doing of a thing lawful in itself, in such careless way as to injure the plaintiffs. The distinction is vital; for nothing can be better settled than that if one do a lawful act upon his own premises he cannot be held responsible for injurious consequences that may result from it, unless it was so done as to constitute actionable negligence. *Boynton* v. *Rees,* 9 Pick. 528; *Howland* v. *Vincent,* 10 Met. 371; *Tourtellot* v. *Rosebrook,* 11 Met. 460; *Thurston* v. *Hancock,* 12 Mass. 220; *Bachelder* v. *Heagan,* 6 Shepley, 32; *Panton* v. *Holland,* 17 Johns. 92; *Brown* v. *Kendall,* 6 Cush. 292.

The defendants did a thing lawful in itself; they opened the drain on their own land; this it is conceded they had a right to do: they closed it; this it was their duty to do. Whether they used reasonable care in the discharge of this duty or were guilty of negligence, was a question of fact for the jury. It was submitted to them under instructions "that the defendants were only bound to use ordinary care in stopping the drain, and that if they used such care, that is, such care and caution as men of common prudence usually exercise in the

management of their own concerns, they were not liable to the plaintiffs for the injury occasioned to them." These instructions were right, and afford reasonable freedom in the use, and reasonable security in the protection of property. What constitutes ordinary care must depend upon the facts of the case; the degree of caution and diligence rising with the exigency and being proportioned to it.

The remark cited and relied upon by the plaintiffs' counsel, from the opinion of Gibbs, C. J. in *Sutton* v. *Clarke*, 6 Taunt. 29, is not only strictly an *obiter dictum*, but cannot be sustained we think upon principle or authority.

*Exceptions overruled.*