## SHAW v. LORD.

No. 3250. Opinion Filed January 13, 1914.

(137 Pac. 885.)

1. **ASSAULT AND BATTERY—Self-Defense—Injury to Bystander —Liability.** It is error to instruct the jury in effect that one who, in his lawful self-defense, at close range shoots at an assailant, and, missing him, accidentally wounds a bystander, who, at the time, is to one side of the line of true aim at such assailant, and a few feet away from him, is, in an action for damages, liable to such bystander if he knew or is chargeable with knowledge of the presence of such bystander, as if this, of itself, constituted want of due care, and therefore was, per se, actionable negligence.

2. **SAME—Question for Jury.** Ordinarily, where a person, in lawful self-defense, shoots at an assailant, and, missing him, accidentally wounds an innocent bystander, he is not liable for the injury, if guilty of no negligence; and the question of negligence is for the jury.

(Syllabus by Thacker, C.)

Error from District Court, Le Flore County;

Malcolm E. Rosser, Judge.

Action by Anna Lord against John Shaw. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Andrews & Day*, for plaintiff in error.

*J. E. Whitehead* and *C. R. Barry*, for defendant in error.

Opinion by THACKER, C. Plaintiff in error will be designated as defendant, and defendant in error as plaintiff, in accord with their respective titles in the trial court.

On July 1, 1905, defendant, a deputy United States marshal, and Bert True, a posseman, having a warrant duly authorizing them to do so, undertook the arrest of Joseph Smith, who was a fugitive from justice, charged with a felony, and who was believed by defendant to be so dangerous that he might kill an officer trying to arrest him, unless he realized the latter had a clear advantage of him, and that resistance would be futile.

True resided in Wilburton, Okla. (then Indian Territory). Defendant, in response to a phone call from True, who then had possession of the warrant, came to Wilburton about five o'clock in the afternoon, had Smith pointed out to him on a street by some one, and thereafter, between five and six o'clock in the afternoon, with True, for the purpose of arresting Smith, went to a hotel in Wilburton, where Smith was eating supper, and where he had spent the preceding night. Upon arrival at the hotel, defendant requested and caused a lady, who was in the hall leading from the front door, on the north, to the door of the dining room, on the south, to request Dave Nowland, a boarder at the hotel, who was an ex-officer, and well known to defendant, to come from the dining room to the front porch, on the north of the hotel, where, according to the undisputed testimony of defendant, of True, and of Nowland, defendant ascertained from Nowland that Smith was then eating supper in the dining room, informed Nowland of the purpose of himself and True to arrest Smith, and requested Nowland to follow Smith from the dining room into said hall, and there seize him from behind so as to prevent him from drawing any weapon, while they effected the arrest; and, although Nowland testified he did not intend to "arrest" Smith, nor to exactly comply with defendant's request, when he left the table with Smith, he further testified, in effect, that he started to follow Smith out to see what might occur, and render such assistance as he could; and it appears to be uncontradicted that Nowland assented to defendant's plan for the arrest, and that defendant, with good reason, believed that Nowland would follow and seize Smith so that his arrest might be safely effected. When Smith left the supper table, it appears that Nowland also left it, and went as far as the door of exit from the dining room into the hall, but met and turned back with a fellow boarder to seats at the table, perhaps abandoning his purpose to assist defendant.

It appears that Smith knew defendant, but it does not appear whether the defendant knew or suspected this, nor whether in fact Smith knew he was an officer; and it appears that True, if not the defendant, saw Smith step from the dining room into

the hall, then step back into the dining room, and then, at once, come forth into the hall, when the shooting occurred, but it does not appear whether Smith saw or knew True before his final exit from the dining room.

Smith and one Thurston, the latter in front, entered the hall about the same time immediately preceding the shooting, and defendant, who was in waiting with True on the front porch, hearing them, if no one else approaching, either immediately before or immediately after Smith made his final exit from the dining room, advanced to the front door and looked into the hall from the porch, and, evidently to his surprise, discovered that Smith, after making his final exit from the dining room, was approaching without any one holding or in position to seize him, whereupon, when Smith had gotten half or two-thirds the way along the hall, a shooting combat at close range occurred between defendant and True, on one side, and Smith, on the other.

The evidence is very conflicting, and the facts not fully developed as to some of the features of the combat; but it seems reasonably certain that Smith, in a crouching position, and with his hand on his pistol in his hip pocket, was approaching defendant before defendant fired at him, and perhaps before defendant drew or commenced to draw his pistol (one of plaintiff's witnesses, Mr. Thurston, in a measure, corroborates defendant on this point, and it is undisputed). It also seems certain that both defendant and True, the former first, fired at Smith from their position in the front door, at the north end of the hall, and that Smith, after defendant fired, fired and struck the door stop so close to True's head as to cause splinters therefrom to strike his cheek. It also appears reasonably certain, notwithstanding the testimony of one witness to more, that only one shot was fired by defendant and one by True before Smith, who also probably fired only one shot, got out to the steps in front of the hotel.

Plaintiff, then a girl of fifteen years engaged in work at the hotel, without notice of the impending danger, stepped into the hall, from a washroom, within a few feet of Smith, but, it appears, to the east of him, and there received a wound in her

right side when the shooting commenced; and, although both de-
fendant and True testified in effect that the shot fired by the
latter was the one that struck her, and plaintiff so stated soon
after she was shot, we must assume, in deference to the ver-
dict and her testimony to that effect, that defendant's shot, which
was the first one fired, was the one that struck her. It appears
that the ball entered in front, at about the eighth rib, and made
its exit about six inches back, without penetrating the cavity of
her body; and, besides being confined to her bed for about two
weeks, with the suffering incident to such case, she has since
suffered occasional soreness at the places of entrance and exit
of ball and, during cold weather, pain in her shoulder, "just like
[she] did when [she] was shot." It is alleged in plaintiff's peti-
tion that defendant entered the hotel "excitedly, and drew a
pistol from his pocket, and began firing the same rapidly and
excitedly, and in a very careless manner; that one bullet from
the pistol penetrated the body of plaintiff  *  * . *  that said
shooting by said defendant was wholly without cause;  *  *  *
that, by reason of said wrongful and negligent act of the said
defendant in shooting this plaintiff, as aforesaid, she has been
damaged," etc.

The defendant's answer, besides a general denial, especially
denies that he fired the shot which wounded plaintiff, and shows
that he was authorized to arrest Smith, that the shot he fired
was in necessary self-defense while lawfully and properly en-
deavoring to arrest Smith, so that, if, by chance, the shot fired
by him struck plaintiff, he is not liable for damages for such
accident.

The trial court instructed the jury that defendant had the
right to fire at Smith when he did; but further instructed in ef-
fect that defendant would be liable to plaintiff for damages if
he was guilty of negligence in shooting at Smith without due
regard for the safety of bystanders, and, still further, as if this,
of itself, constituted want of due care, and therefore was, *per se,*
actionable negligence, that "if, at the beginning of the difficulty,
Shaw saw this woman, or should have seen her, and began firing,

knowing she was there, and a ball from his pistol struck her, then he would be responsible."

In Croker on Sheriffs (2d Ed.) sec. 62, it is said: "The arrest may be made in any place, for no place affords protection to a criminal, not even the church or the churchyard." To the same effect, see Murfree on Sheriffs, secs. 161, 162; New England Sheriffs and Constables (Hitchcock) sec. 167; 2 Am. & Eng. Enc. Law (2d Ed.) 855.

There can be no doubt of defendant's right, and under the evidence we must assume it was his duty, to effect the arrest of Smith at the hotel; but, of course, this does not relieve him of the duty to exercise such care to avoid injury to other persons as a person of ordinary prudence would usually exercise in doing so under like circumstances, or, which, in the present case, is its equivalent differently stated in respect to criteria, such care as persons of ordinary prudence usually exercise about their own affairs of great importance, and, in this aspect, great care.

In *Morris v. Platt*, 32 Conn. 75, it is held:

"Where a person in lawful self-defense fires a pistol at an assailant, and, missing him, wounds an innocent bystander, he is not liable for the injury, if guilty of no negligence."

To the same effect, see *Paxton v. Boyer*, 67 Ill. 132, 16 Am. Rep. 615. These, which are the only cases we find deciding this precise point, appear to be in accord with the general rule that, "where an act is lawful in itself, injury resulting therefrom is not actionable, unless the act is done at a time, or in a manner, or under circumstances indicative of a want of proper regard for the rights of others." *Boynton v. Rees*, 26 Mass. (9 Pick.) 528; *Howland v. Vincent*, 51 Mass. (10 Metc.) 371, 43 Am. Dec. 442; *Tourtellot v. Rosebrook*, 52 Mass. (11 Metc.) 460; *Brown v. Kendall*, 60 Mass. (6 Cush.) 292; *Rockwood v. Wilson*, 65 Mass. (12 Cush.) 221; *Macomber v. Nichols*, 34 Mich. 212, 22 Am. Rep. 522; *Norfolk & W. Ry. Co. v. Gee*, 104 Va. 806, 52 S. E. 572, 3 L. R. A. (N. S.) 111; *Pickens v. Coal River Boom & Timber Co.*, 51 W. Va. 445, 41 S. E. 400, 90 Am. St. Rep. 819. And the two cases, *Morris v. Platt* and *Paxton v. Boyer*, supra, also appear to be but concrete applications of the rule that

there is no liability for the results of an accident, unless the person causing same is guilty of negligence. See 1 Am. & Eng. Enc. Law (2d Ed.) 273. The rule as announced in the cases of *Morris v. Platt* and *Paxton v. Boyer, supra,* is stated in Hale on Damages (2d Ed.) sec. 5, p. 19, citing, besides said two cases, *Scott v. Shepherd,* 2 W. Bl. 892, which is reported in 96 Eng. Rep. (Full Reprint) 525, and is instructive.

Ordinarily, and so far as appears in this case, this must be the correct rule; and the only qualification thereof that in any case would seem to commend itself is that, where such self-defense is obviously dangerous to others, and the necessity thereof may be avoided by withdrawing from the combat, or, in other words, by "retreating to the wall," we apprehend it would be for the jury to say whether due care for the safety of bystanders would not require such avoidance.

The instruction that "if, at the beginning of the difficulty, defendant saw plaintiff, or should have seen her, and began firing, knowing she was there, and a ball from his pistol struck her, then he would be responsible," appears to be error.

If, as affecting only Smith's rights in this regard, defendant had the right to shoot at Smith when he did, the mere fact that he may or should have seen or known that plaintiff was near Smith, but to one side of the line of a true aim, would not necessarily render him liable for the accident; certainly not, if in gun used, in aim taken, and in manner and means of firing he exercised that degree of care which a person of ordinary prudence would usually exercise.

Although defendant may be chargeable with knowledge as to where plaintiff was when he began to fire, the question as to whether he was negligent was for the jury; and, for aught that appears, she may have been so far to one side of a line of true aim as to have reasonably presented to him the appearance of safety, if he saw her—he being close to Smith when he fired.

In anticipation of a new trial in this case, we should, perhaps, state that, if there should be evidence tending to show that, without greater risk of the escape of Smith, the arrest might within the knowledge of or chargeable to defendant have been

effected elsewhere, or in a different manner, or by different means than it was, with less danger of resistance by Smith, or less danger of injury to bystanders as a result of such resistance, the defendant being informed and believing that Smith was dangerous to the extent hereinbefore stated, it would not be improper to submit to the jury the question as to whether defendant was in that respect guilty of actionable negligence in failing to exercise due care for the safety of bystanders, which was a proximate cause of the injury inflicted upon the plaintiff, as well as to whether he was guilty of such negligence in the manner or means of his lawful self-defense, if the same was lawful. And, in this connection, it may be observed that, although Smith, in an assault upon defendant, may have been guilty of a wrong making self-defense necessary to defendant, and thus proximately causing the injury to plaintiff, and therefore liable to her in an action for damages, this would not necessarily relieve defendant of liability if he were guilty of a wrong in failing to exercise due care for the safety of bystanders, which was also a proximate cause of the same.

For the reasons stated, this case should be reversed, and a new trial granted.

By the Court:  It is so ordered.