Argued May 31, reversed and remanded July 3, rehearing denied July 24, motion to recall mandate denied September 11, 1917.

## ASKAY v. MALONEY.*

(166 Pac. 29.)

**Arrest—Use of Force—Police Officer.**

1. Police detectives, having arrested one who they had reason to believe, and evidently believed, had committed a felony, had the right, when he broke away, to use such means and degree of force as were reasonably necessary to recapture him, including shooting at him, if without evil design and under circumstances of imperative duty.

> [As to what constitutes arrest and what may be done to accomplish it, see note in 61 Am. Dec. 151.]

**Municipal Corporations—Police Detective—Negligent Shooting—Liability.**

2. Although a police officer might justifiably discharge a weapon to recapture an escaping prisoner, yet if the shooting were done in a public place, where the police officer should have known that people were likely to congregate or pass, it might constitute such negligence as to render the officer civilly liable for such injury as he might inflict upon an innocent person.

**Evidence—Judicial Notice—Expectancy of Life.**

3. Without offering in evidence accepted standards of mortality tables to show the expectancy of life, a court will take judicial notice of the average duration of the life of a healthy person of the age of one whose death is under consideration.

**Trial—Instructions—Requests for.**

4. In an action for death, for the jury to have the benefit of knowledge derived from mortality tables, plaintiff's counsel should request an instruction giving information on that subject.

---

*On the general rule as to use of force in making arrest in case of felony, see note in 67 L. R. A. 297.

On liability of sureties on bond of peace officer for latter's act in killing or injuring one person while attempting to execute criminal process against another, see note in 29 L. R. A. (N. S.) 463.

REPORTER.

Trial—Instructions—Abstract Instructions.

5. In action for wrongful death, an instruction as to damages, considering deceased's age, habits, etc., not based on any evidence as to most of the elements adverted to, was abstract, and therefore erroneous.

Municipal Corporations—Police Officers—Liability on Bond.

6. In action against police detectives and their surety for death from accidental shooting of deceased as the detectives were recapturing an escaping prisoner, it was not error to refuse to require plaintiff to elect the officer who caused the injury, where it appeared that both officers were firing shots.

Municipal Corporations—Police Officers—Liability on Bond.

7. Under Sections 348, 349, L. O. L., as to bonds of city officers, and allowing action thereon by the one injured by the principal's delinquency, a surety company bonding city detectives was properly joined in action against them for death from their negligent shooting; and a prior judgment against the principals and satisfaction by them was unnecessary, for, the bond having been given under the statutes, it was an official bond, and deemed to give the statutory remedy.

Jury—Examination of Jurors.

8. Where a corporate bonding company was a proper party defendant, it was not error to permit persons called as jurors to state, over objection and exceptions, upon their *voir dire*, that they were not, and never had been, interested in indemnity security companies.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.   Statement by MR. JUSTICE MOORE.

This is an action by T. M. Askay against P. R. Maloney, T. Swennes, and the Southwestern Surety Insurance Company, a corporation, to recover damages for the death of plaintiff's son, Walter E. Askay, which was caused by a gunshot wound. The material facts are that after dark, on December 25, 1914, W. Hines was assaulted upon a street in Portland, Oregon, by two colored men who forcibly took from him a watch and some money. He reported the loss to the city police department, and the defendants, detectives Maloney and Swennes, were detailed to investigate the case. They, with Hines, went to the vicinity of the robbery, where in a saloon they found two men, one of whom, John Jones, was recognized

by Hines as his assailant. The officers arrested both men and found in Jones' pocket a watch which Hines identified as having been taken from him. Jones in charge of Maloney and the other man in the custody of Swennes, accompanied by Hines, about 10 o'clock at night, started walking to the city jail. When they reached the corner of Oak and Sixth Streets Jones broke away and ran north on the east side of Sixth Street, pursued by Maloney. Thereupon Hines took charge of the other man, whom he conducted to the municipal prison, and Swennes joined in the chase. The streets being slippery from falling rain Jones and Maloney fell as each turned east on the south side of Pine Street. Jones, hastily rising, continued his journey, when Maloney, getting upon his feet, commanded the fleeing man to halt, telling him that if he did not obey he would be shot. Paying no heed to the order Jones turned northeasterly toward a covered wagon standing near the center of the block and continued running east on the north side of Pine Street, when Maloney shot twice at him with a revolver. Thereupon Swennes, having overtaken Maloney, also fired two shots from a revolver at Jones. In the meantime, an electric car, unobserved by either officer, was crossing Pine Street going north on the east side of Fifth Street, and evidently one of the bullets so discharged, piercing a window of the car, struck Walter E. Askay in the neck. Jones again slipped and fell as he undertook to cross Fifth Street, and was caught by the officers beside the car as it halted on the north side of Pine Street to remove the injured passenger, who was taken to a hospital, where he died from the effects of the wound. Jones having been tried for and convicted of the robbery was sentenced to a term of imprisonment in the state penitentiary.

Pursuant to a clause of the charter of Portland requiring police detectives to give a bond in the sum of $1,000, the defendant, the Southwestern Surety Insurance Company, for a valuable consideration, executed an undertaking to reimburse the city or any person for loss sustained by reason of the failure of Maloney or Swennes faithfully to discharge his duties, and to make payment, to the extent of $1,000 each, of damages that might be adjudged against either officer by any tribunal for the illegal arrest, imprisonment, or injury by him of any person.

The complaint alleges that the plaintiff was duly appointed administrator of his son's estate, and thereupon obtained from the trial court leave to institute this action against all the defendants. The facts hereinbefore detailed are substantially set forth in the complaint, which charges, in effect, that the intersection of Pine and Sixth Streets is a business section of the city, and that while Maloney and Swennes knew persons were passing at that place at all hours of the day and night, and that cars on Fifth Street crossed Pine Street at regular intervals carrying passengers, these officers carelessly and negligently discharged their weapons in such locality thereby causing the death of the deceased, to the damage of his estate in the sum of $7,500. Judgment was demanded against the police detectives and each of them for $5,500 and against the Southwestern Surety Insurance Company for the further sum of $2,000.

Motions to strike out parts of the complaint and to make that pleading more definite and certain by alleging whether Maloney or Swennes fired the shot that caused the injury were denied. Each defendant thereupon separately demurred to the complaint on the ground that it did not state facts sufficient to con-

stitute a cause of action. These demurrers having been overruled, the Southwestern Surety Insurance Company declined further to plead. Maloney and Swennes, however, separately answered denying the material averments of the complaint, and for further defenses allege, in effect, that in order to recapture Jones, who had committed a felony in Portland, Oregon, it became necessary to shoot at him, and that with due care and caution these defendants, as officers authorized to make the arrest, shot at the fleeing man, but in doing so they did not use any more force than was essential to catch the escaped prisoner, which discharge of weapons is the shooting alleged in the complaint.

Replies put in issue the allegations of new matter in the answers, and the cause coming on for trial the plaintiff introduced his evidence in chief. Whereupon counsel for Maloney and Swennes separately moved for a judgment of nonsuit on the ground that no testimony had been offered tending to show that either officer was negligent. These motions were denied and exceptions taken. When the cause was finally submitted, defendants' counsel requested the court to direct a verdict in favor of their clients on substantially the same grounds as last stated, which request was denied, and an exception saved. The jury, complying with the court's interrogatory, "Were the police officers warranted under the instructions which I have given you in firing upon the man John Jones, the man accused of robbery?" answered, "Yes." Verdicts were returned against Maloney and Swennes for $1,000, and against the Southwestern Surety Insurance Company upon its undertaking in behalf of such officers in the sum of $500 each. A

judgment having been rendered in accordance with the verdicts, the defendants jointly appeal.

REVERSED AND REMANDED.

For appellants, Mr. Patrick R. Maloney and Mr. Tom Swennes, there was a brief over the names of *Mr. Henry J. Bigger* and *Mr. Stanley Myers,* with an oral argument by *Mr. Bigger.*

For appellant, Southwestern Surety Insurance Company, there was a brief submitted by *Mr. Chester V. Dolph.*

For respondent, there was a brief over the names of *Messrs. Richards & Richards,* and *Mr. Coy Burnett,* with oral arguments by *Messrs. Richards & Richards.*

MR. JUSTICE MOORE delivered the opinion of the court.

1, 2. It is contended that the special finding by the jury absolves the defendants from all civil liability, and this being so errors were committed in receiving the general verdicts and in rendering judgment thereon. A careful reading of the instructions given to the jury induces the belief that the word "warranted" as used by the court in its interrogatory was intended to be understood as "justified." Maloney and Swennes, as members of the police force of Portland, Oregon, having reason to believe, and evidently believing, that a felony had been committed in that city, and that Jones was guilty thereof, had the right to use such means and degree of force as were reasonably necessary to recapture him, and if they intentionally, but without evil design and under such circumstances of duty as to render their acts proper and to relieve them from any shadow of blame criminally, shot at him,

they were justified in doing so. Though a peace officer might discharge a weapon under the circumstances stated and his act be justified, if, however, the shooting were done in a public place where the officer understood or should have known people were in the habit of congregating or were likely to pass, the act might constitute such negligence as to render the officer civilly liable for any injury that he might inflict upon an innocent person. For a general discussion of this and kindred subjects, see *Brown* v. *Kendall,* 6 Cush. (60 Mass.) 292; *Morris* v. *Platt,* 32 Conn. 75; *Paxton* v. *Boyer,* 67 Ill. 132 (16 Am. Rep. 615); *Shaw* v. *Lord,* 41 Okl. 347 (137 Pac. 885, Ann. Cas. 1916C, 1147, 50 L. R. A. (N. S.) 1069). The acts of the officers so far as they related to Jones were evidently ''warranted'' in using the force employed to recapture him. While this conclusion is reasonably deducible from the evidence as specially found by the jury, their answer to the question propounded to them by the court does not inevitably show that the detectives were blameless civilly in shooting in a place where they knew or should have known street-cars were passing at regular intervals. No error was committed in treating the special finding as advisory only.

3, 4. An exception was taken to a part of the court's charge, and it is maintained that an error was committed in instructing the jury as follows:

''You will, therefore, take into consideration what you know of Walter Askay as it has been developed in the testimony, considering his age, his habits of industry, his habits of sobriety, his habits of saving. What would he, from his physical and intellectual abilities, have acquired if he had finished out his life? The elements which I have given to you of a sentimental nature are, of course, to be taken out of the case and not to be considered. It is the value of the

estate. That is what is sued for here, and that is the amount which must be given. Then award the plaintiff the amount which you think he is entitled to receive against Mr. Maloney and Mr. Swennes, and the amount which you think should be recovered against the insurance company.''

The objection thus urged is not against the language so employed, which is a fair exposition of the rule generally applicable to a case of this kind, but it is insisted by defendants' counsel that no testimony was offered tending in any manner to substantiate most of the elements adverted to by the court as the basis to be considered in estimating and measuring the damages to be awarded, thereby rendering the instruction improper. A careful examination of the entire testimony given at the trial, a transcript of which is duly certified to and made a part of the bill of exceptions, shows that Walter S. Askay would have been 21 years old if he had lived until the month following his injury; that he was employed at Portland, Oregon, by the proprietors of a large department store to drive a delivery vehicle, for which service he was paid $52 a month; and that he took his meals and lodged at a boarding-house, but what he paid therefor is not disclosed. This includes the entire testimony upon which the instruction so challenged is based. It will be assumed that as in this case without offering in evidence accepted standards of mortality tables to show the expectancy of life of Walter S. Askay, the court would have taken judicial notice of the average duration of a healthy person of the age of the deceased at the time he was shot: 16 Cyc. 871; *Lanfear* v. *Mestier,* 18 La. Ann. 497 (89 Am. Dec. 658, 694). In order that the jury might have had the benefit of such knowledge, however, they should

have been informed on that subject, thereby imposing upon plaintiff's counsel the duty of requesting an instruction in relation thereto.

5. In *Morrison* v. *McAtee,* 23 Or. 530, 536 (32 Pac. 400), Mr. Justice BEAN, referring to standard mortality tables showing the expectation of life of a person at a given age, observes:

"They are simply the result of calculations based upon a certain average rate of mortality as shown by experience, and assuming that all of the same age are of equal value. But the constitution, habits, and health of individuals differ essentially, and this must be taken into consideration in estimating the probable length of life of any given person, and, therefore, no ordinary table of expectation of life, although it may offer much valuable information, can alone be taken as a correct rule for estimating the value of the life of any particular individual."

In the trial of a cause before a jury the judge cannot usually give constant attention to the reception of the entire evidence for some thought must be bestowed upon the preparation of instructions appropriate to the issues and consonant with the testimony necessary to substantiate the averments of the respective parties, and for that reason it is sometimes assumed, as was evidently done in this instance, that the requisite proof had been made and the jury charged in relation thereto. Such instructions, however correctly they may announce the legal principle involved by the pleadings, are abstract when not supported by any evidence, and hence they are erroneous: *Morris* v. *Perkins,* 6 Or. 350; *Glenn* v. *Savage,* 14 Or. 567 (13 Pac. 442); *Bailey* v. *Davis,* 19 Or. 217 (23 Pac. 881); *Bowen* v. *Clarke,* 22 Or. 566 (30 Pac. 430, 29 Am. St. Rep. 625); *Geldard* v. *Marshall,* 47 Or. 271

(83 Pac. 867, 84 Pac. 803); *Olsen* v. *Silverton Lumber Co.,* 67 Or. 167 (135 Pac. 752).

In view of the conclusion thus reached it is deemed important to consider some questions that may again arise. Thus it is certain that both police detectives could not have discharged the single bullet which caused the resulting death. In *Wert* v. *Potts,* 76 Iowa, 612, 614 (41 N. W. 374, 14 Am. St. Rep. 252), it was held that where several parties were lawfully engaged in the common purpose of making an arrest, and one of them in furtherance of such design, but without the concurrence of his associates, committed a tort, the others were not liable therefor. In deciding that case Mr. Justice BECK remarks:

"Surely, no one is ready to claim that officers and others, acting in concert in making a lawful arrest, are liable for the unlawful act of one of their number, done without their concurrence."

To the same effect see *Richardson* v. *Emerson,* 3 Wis. 319 (62 Am. Dec. 694).

6. In the case at bar there was at least a tacit concurrence in the commission of the alleged tort, for it will be remembered that both officers were discharging their revolvers in an attempt to effect the recapture of Jones when one of the bullets struck a passenger on a street-car. It is unquestionably important to the Southwestern Surety Insurance Company that the jury should find, if possible, whether Maloney or Swennes fired the shot which caused the injury, for if only one of the officers was guilty of negligence in discharging his weapon in the direction of where he must have known street-cars would pass at regular intervals, the greatest judgment that could be rendered against the surety company is necessarily limited to the sum of $1,000, the amount of the indemnity

specified in the bond. If, however, the jury will be unable certainly to determine this question from the evidence to be received, the plaintiff should not be denied any relief because of his inability to identify the police detective who fired the fatal shot when both officers were discharging their revolvers and when it is borne in mind that the surety company executed the indemnity undertaking for a consideration. No error was committed in denying the motion to require the plaintiff to elect the officer who caused the injury.

7. The motion of the Southwestern Surety Insurance Company to strike from the complaint all reference to the giving of a bond on behalf of the police detectives on the ground that such allegations were irrelevant and the demurrer to that pleading for that it did not state facts sufficient to constitute a cause of action were predicated on the assumption that the surety company, by express stipulation contained in the undertaking, was not primarily liable nor even amenable until a judgment rendered against those officers had not been discharged by them. Section 152 of the charter of the City of Portland, as amended June 3, 1907, requires every detective to give a bond in the sum of $1,000

"for the faithful discharge of his duties, and the payment of any damage that may be adjudged against him by any tribunal for the illegal arrest, imprisonment, or injury by him to any person."

The undertaking given by the surety company on behalf of Maloney and of Swennes, who with others are named as the officers for the faithful performance of whose several duties the bond was executed, complies with the requirements of the clause of the municipal charter mentioned. This undertaking was, therefore, an official bond: Murfree, Official Bonds, § 35.

"Official bonds will not be declared invalid by the courts, except on the most satisfactory grounds": 4 R. C. L. 53.

"Except where the statute, either expressly or impliedly, declares all bonds void which do not strictly comply with the requirements therein prescribed, a bond need not be in the exact words of the statute, and the fact that it slightly varies from the form prescribed will not invalidate it, provided it includes substantially all that the statute requires, that is, such obligations as are imposed by the statute, and allows every defense given by law, as where it is more specific than the statute requires but imposes no additional obligation": 9 C. J. 24.

To the same effect see: 2 Brandt, Suretyship Guaranty (3 ed.), § 664; 5 Cyc. 754; *Growbarger* v. *United States Fidelity & G. Co.,* 126 Ky. 118 (102 S. W. 873, 128 Am. St. Rep. 274, 11 L. R. A. (N. S.) 758); *Martin* v. *Smith,* 136 Ky. 804 (125 S. W. 249, 29 L. R. A. (N. S.) 463); *Lee* v. *Charmley,* 20 N. D. 570 (129 N. W. 448, 33 L. R. A. (N. S.) 275).

Our statute declares:

"The official undertaking or other security of a public officer to the * * city * * shall be deemed a security to the * * city * * and also to all persons severally for the official delinquencies against which it is intended to provide": Section 348, L. O. L.

"When a public officer by official misconduct or neglect of duty shall forfeit his official undertaking or other security, or render his sureties thereon liable upon such undertaking or other security, any person injured by such misconduct or neglect, or who is by law entitled to the benefit of the security, may maintain an action at law thereon in his own name, against the officer and his sureties, to recover the amount to which he may by reason thereof be entitled": Section 349, L. O. L.

8. Though the motion and demurrer last referred to are, first, in the nature of an objection to the complaint for an alleged misjoinder, and, second, tantamount to a plea in abatement, they are without merit, and no error was committed in denying the motion or in overruling the demurrer.   The Southwestern Surety Insurance Company thus being a proper party defendant no error was committed in permitting persons called as jurors to state, over objection and exception, upon their *voir dire* that they were not and never had been interested in indemnity security companies.

For the error committed in giving the instruction hereinbefore set forth the judgment is reversed and a new trial ordered.        REVERSED AND REMANDED.

REHEARING DENIED.

MOTION TO RECALL MANDATE DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCCAMANT concur.