[Civ. No. 29476.   Second Dist., Div. Five.   May 26, 1967.]

FRANCINE BARTOSH, Plaintiff and Appellant, v. THOMAS M. BANNING, JR., et al., Defendants and Respondents.

Hansen, Dillman & Werner, Donald E. Werner and Edward L. Lascher for Plaintiff and Appellant.

Chase, Rotchford, Downen & Drukker, James J. McCarthy, Betts & Loomis and Royal M. Miller for Defendants and Respondents.

FRAMPTON, J. pro tem.* — Plaintiff filed her action

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

wherein she sought damages for personal injuries claimed to have been sustained as the result of a hand to hand combat between the defendants Thomas M. Banning and Jerry Di Donato which occurred upon the premises owned and operated as a bar by the defendant Strebor Corporation and while the plaintiff was lawfully upon the premises as an invitee.

The cause was tried before a jury and at the conclusion of the plaintiff's case and on motion of the plaintiff the action was dismissed as to Di Donato; the motion of Strebor Corporation for judgment of nonsuit was granted and a written order of dismissal as to it was entered. Further evidence was taken and the cause was then submitted to the jury as to the defendant Banning only. The jury returned its verdict in favor of Banning and against the plaintiff and judgment was entered upon the verdict accordingly. The plaintiff appeals from the judgment of nonsuit and from the judgment entered upon the verdict.

## The Facts

Plaintiff, a woman 45 years of age, was an organist-pianist by occupation, and had for approximately 20 years followed her profession by playing in cocktail lounges and dining rooms. She met Di Donato about 9 p.m. on October 4, 1961, at a cafe known as the Gilded Rafters where the plaintiff, with her mother and aunt, had dinner. Plaintiff had nothing of an alcoholic nature to drink while at the Gilded Rafters. Her escort, Di Donato, had two highballs while there. About 10:30 or 11 p.m. the plaintiff and Di Donato left the Gilded Rafters and went to the Intrepid Fox, a bar owned and operated by the defendant Strebor Corporation. They sat down upon stools at the bar and the bartender greeted Di Donato. The room used as a bar, adjacent to the restaurant, occupied a space approximately 18 feet in width by 25 feet in length. There were stools arranged around the bar for the convenience of the customers and there were also booths or alcoves furnished with tables and chairs along one wall for the convenience of customers who did not wish to be served at the bar. There were also some tables and chairs situated in the floor area outside of the space occupied by the booths.

Plaintiff was seated to the right of Di Donato. She had never been to this bar before and went at Di Donato's suggestion. She had nothing of an alcoholic nature to drink while at the Intrepid Fox. Di Donato had one, possibly two highballs to drink before the defendant Banning arrived. There was a

man seated at the bar next to the plaintiff on her right. Neither she nor Di Donato knew him. Di Donato and the man seated on plaintiff's right engaged in conversation about a certain celebrity being a conscientious objector, and about Communism. Plaintiff took no part in this conversation. The bartender was at his position behind the bar. Di Donato and the stranger were just "Friendly arguing."

The defendant Banning came into the premises in about 20 minutes after the plaintiff and Di Donato had seated themselves at the bar and at a time when the latter and the stranger were discussing Communism. Their discussion seemed loud for such a small place. Banning was staggering when he came through the door into the bar premises and went directly to a man whom he appeared to know, later identified as a Mr. Atkins, who was seated around the corner of the bar to the plaintiff's left. Banning was very angry about some woman, "The woman wanted too much money or something." Atkins was trying to calm him down. Banning immediately ordered and drank one drink, then ordered another. At this time the distance between where Mr. Banning was standing and where the plaintiff was seated was approximately six or seven feet. Banning stood for about two minutes talking to Mr. Atkins then he sat down. As Di Donato and the stranger continued to discuss Communism and "the way the Russians were doing things, and feeling each other out on their feelings toward this matter," Banning yelled across the room, "If you feel that way why don't you Jews go back where you came from." Di Donato then said, "Don't look at me, I am a Dago." Banning said several more things about the Jews, that the Jews were the cause of all the trouble, and Di Donato said, "I am still a Dago." An interval of three to four minutes elapsed between the time the first remarks were made and the time of the last remarks.

Banning, holding his glasses in his hand, in spite of the fact that Atkins was telling him to sit down, then came around towards the side of the bar where the plaintiff and Di Donato were seated and struck Di Donato hard enough to knock him against the plaintiff and to knock the plaintiff backwards and a second blow by Banning, which came immediately after the first blow, struck the plaintiff on the shoulder. Di Donato was seated, "possibly started to stand," but "He didn't have a chance, it happened too fast." Di Donato's body went back against the plaintiff and knocked her off of the bar stool and caused her to strike the back of her

head against a table. At this juncture the plaintiff was helped outside the bar by a patron where she remained for a few minutes then returned to her former position at the bar to have a cup of coffee. While the plaintiff was talking to a patron, Banning again came towards the bar with his hand extended as if to shake hands. Instead of shaking hands Banning again "put his. fist into Mr. Di Donato." In this second altercation the plaintiff was pulled to one side by a patron and only "went down slightly."

The evidence most favorable to the plaintiff discloses that one Andrew Varela, employed by the Strebor Corporation as a bartender, was the only person on duty on the bar premises just before the altercation took place. At this time there was no telephone on the premises and if a message came by telephone which required the attention of Varela, it was necessary for him to leave the bar and answer the telephone located outside of the bar premises. Varela heard the conversation between Banning and Di Donato which led up to the first altercation. He was then called to the telephone by a fellow employee. He left the bar unattended for four or five minutes to answer the telephone. When he returned he found Banning and Di Donato wrestling on the floor. The plaintiff was off of her stool and Varela then pulled Banning off of Di Donato. A telephone was subsequently installed in the bar premises.

## The Contentions

Plaintiff contends that (1) under the state of the evidence it was error to grant the motion for judgment of nonsuit as to Strebor Corporation; (2) the court erred in instructing the jury on the issue of contributory negligence as there was no evidence upon which such an instruction could be based, and (3) the court erred in its instructions on the issue of criminal assault.

## The Law

The uniform rule which an appellate court should follow in disposing of an appeal from a judgment of nonsuit is, that the court must view the evidence in the light most favorable to the appellant, must disregard all inconsistencies and draw only those inferences from the evidence which can reasonably be drawn which are favorable to the appellant. (*Golceff* v. *Sugarman,* 36 Cal.2d 152, 153 [222 P.2d 665].)

One who operates a bar where the public is invited must use reasonable care to protect his invitees against injury through the negligent or wrongful acts of other invitees on

the premises where he has reasonable cause to anticipate such acts and the probability of injury resulting therefrom. In particular, the possessor must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at his hands. He must act as a reasonable man to avoid harm from the negligence of other persons who have entered the premises or even from intentional attacks on the part of such third persons. He is required to take action only when he has reason to believe, from what he has observed or from past experience that the conduct of the other will be dangerous to the visitor. (*Winn* v. *Holmes,* 143 Cal.App.2d 501, 504 [299 P.2d 994]; Prosser on Torts (3d ed.) Invitees, § 61, p. 405; 2 Rest., Torts, § 344.) The test of whether the duty of reasonable care is discharged is the probability or possibility of injury to the plaintiff. (*Slawinski* v. *Mocettini,* 217 Cal.App.2d 192, 197 [31 Cal.Rptr. 613].) Whether the person in charge of the premises, in the exercise of ordinary care, should have observed the conduct of the offender, realized that it was likely to result in injury to an invitee, and stopped it, are questions to be determined by the trier of fact. (*Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802, 811 [167 P.2d 729]; *Slawinski* v. *Mocettini, supra,* 197.)

The evidence, viewed in a light most favorable to the plaintiff, presents the picture of a man staggering into the premises under the control of the defendant Strebor Corporation; he was in such a state of anger and agitation that his companion tried to calm him down; he immediately ordered and was served a drink by the defendant's bartender; he immediately consumed this drink and ordered another; he then engaged in mouthing obnoxious and provocative language toward another invitee. After these things had occurred in the presence of Varela, the defendant's employee, and the only person in charge of the bar premises at this time, Varela left the premises wholly unattended for a period of four to five minutes to answer a telephone which was situated outside of the bar premises. When Varela returned the fight between Banning and Di Donato was well under way and the injury to the plaintiff had already occurred. Under these circumstances we do not believe that it can be said as a matter of law that the evidence shows no failure on the part of the defendant Strebor Corporation to use ordinary care to control the conduct of Banning to prevent injury to other invitees, which might have been reasonably foreseeable and anticipated from

his condition, mood and the provocative language which was used.

The crimes of assault and battery are intentional torts. In the perpetration of such crimes negligence is not involved. As between the guilty aggressor and the person attacked the former may not shield himself behind the charge that his victim may have been guilty of contributory negligence, for such a plea is unavailable to him. (*Villines* v. *Tomerlin*, 206 Cal.App.2d 448, 458 [23 Cal.Rptr. 617]; 2 Rest., Torts, § 481, p. 537; *Lowry* v. *Standard Oil Co.*, 63 Cal.App.2d 1, 6 [146 P.2d 57].) By the same token where an innocent bystander is injured as a proximate result of a battery committed by a defendant upon another, such defendant may not assert the defense of contributory negligence as against an innocent bystander on the grounds that the latter failed to retreat from a place lawfully occupied by him to an area outside the range of the defendant's criminal conduct.

As between the person upon whom the battery is being perpetrated and an innocent bystander, if the person attacked injures the bystander while acting in the lawful exercise of his right of self defense, then the question arises, did he act with reasonable care so as not to injure such bystander? In such case the question of negligence on the part of the person unlawfully attacked and contributory negligence on the part of the injured bystander may become an issue, and the defense of contributory negligence may be available.

It has been said that where a person in lawful self-defense fires a pistol at an assailant, and, missing him, wounds an innocent bystander, he is not liable for the injury, if guilty of no negligence. (*Morris* v. *Platt*, 32 Conn. 75; *Shaw* v. *Lord*, 41 Okla. 347 [137 P. 885]; *Booth* v. *J. G. White Engineering Co.*, 101 S.C. 493 [86 S.E. 32, 33]; *Cook* v. *Hunt*, 178 Okla. 477 [63 P.2d 693, 695]; *Askay* v. *Maloney*, 85 Ore. 333 [166 P. 29, 31]; *Askay* v. *Maloney*, 92 Ore. 566 [179 P. 899, 904].) This seems to be in accord with the general rule that where an act is lawful in itself, injury resulting therefrom is not actionable, unless the act is done at a time, or in a manner, or under circumstances indicative of a want of proper regard for the rights of others. (*Shaw* v. *Lord*, *supra*, p. 886.)

In a case of this kind the jury, under appropriate instructions as to the law, would first determine which of the two participants in the fight was guilty of battery. Having determined this, the jury would then determine the question

of negligence, if any, on the part of the person asserting his lawful right of self-defense against such battery, and if the evidence warranted it, then the jury would determine the question of contributory negligence on the part of the injured bystander. ■■ Self-defense being an affirmative defense, it must, in a civil action, be established by the defendant by a preponderance of the evidence. (*Marriott* v. *Williams*, 152 Cal. 705, 710 [93 P. 875, 125 Am.St.Rep. 87]; *Hardy* v. *Schirmer*, 163 Cal. 272, 275 [124 P. 993].)

■■ As between the participants in an altercation resulting in a battery and from which personal injuries are sustained, the right of one to recover damages from the other in a civil action for personal injuries proximately caused by the battery is generally governed by the rules of the criminal law, except as to proof beyond a reasonable doubt, that define assault and battery and the right of self-defense. (5 Cal.Jur. 2d 232, Assault and Battery, § 12.) It is proper, therefore, in such a case for the court to instruct upon these principles of law.

As the case before us went to the jury, Banning was the only defendant remaining after the nonsuit was granted and Di Donato was dismissed. The burden of proof was upon Banning to establish by a preponderance of the evidence that in the altercation which resulted in injury to the plaintiff he was lawfully acting in self-defense. The court instructed the jury only that Banning had the burden of proof to establish contributory negligence on the part of the plaintiff. This was coupled with the usual instructions[1] bearing upon negligence and contributory negligence. The court then instructed the jury at the request of Banning in the language of CALJIC No. 606 that no words of abuse, insult or reproach, etc., will justify assault by means of force likely to produce great bodily injury. At the request of Banning the court instructed the jury on the right of self-defense in the language of CALJIC Nos. 621 and 622. No instruction was given to guide the jury with respect to the duty of Banning, if it was found that in his conduct he was lawfully exercising his right of self-defense to exercise such right with reasonable care to avoid injury to innocent bystanders. The BAJI instructions given on negligence and contributory negligence, and the CALJIC instructions so far as they define the right of self-defense, contained accurate statements of the law as applied in a proper case.

---

[1]BAJI 101, 101-B, 101-C, 101-E, 102, 102-A, 103.1, 136, 138.2, 113.

It is apparent that the jury was left in a state of confusion as to the law applicable to the rights and duties of Banning, Di Donato and the plaintiff. After the jury had deliberated for two hours and forty minutes it returned to the courtroom with the following questions: ''One, is proof of negligence determined only by proof of who started the fight? Two, if not, by prudent action he could avoid the fight and did not, was he negligent?'' At this juncture the trial judge stated: ''You want me to decide the lawsuit for you, I see what you have got on your mind. I think it would be improper for the court to attempt to answer these specific questions. It just doesn't work that way. I can and am prepared to, if you wish me to, reread for you that portion of the instructions which have to do with the definition of negligence and standard of care and so on, which I read to you previously. I discussed this with both counsel and they have agreed that these, they feel, would be the instructions which would cover the area that your questions cover. Now if you want me to reread them, I will be glad to.'' Whereupon the court reread BAJI 101, 101-B, 101-C, 101-E, 102 and 102-A, and CALJIC 606, 621 and 622.

Where the trial court has given instructions which are inadequate, or are so scanty as to leave the jury without a full understanding of the law applicable to the case, and this lack of understanding is brought to the attention of the court by the jury's request for further guidance, it has been said that, ''While the instructions proffered by the respective parties and refused by the court with respect to these issues were either faulty or inadequate in several respects so that the court was not required to give them . . . [citation], and while instructions on some of the vital issues were not submitted by any of the parties at all, the court was not relieved of the responsibility to properly instruct the jury on the controlling legal principles applicable to the case. [Citations.]

It was therefore incumbent on the trial court to give instructions on all the vital issues in the case so that the jury would have a full and complete understanding of the law applicable to the facts.'' (*Distefano* v. *Hall*, 218 Cal.App.2d 657, 672 [32 Cal.Rptr. 770].) ''The responsibility for adequate instruction becomes particularly acute when the jury asks specific guidance.'' (*Trejo* v. *Maciel*, 239 Cal.App.2d 487, 498 [48 Cal.Rptr. 765].)

[9b] In the present situation neither side offered instructions bearing upon the responsibility of a wrongful aggressor

in the perpetration of a battery for injuries proximately caused thereby to an innocent bystander, nor were instructions offered on the duty of a person acting in lawful self-defense to exercise such right with reasonable care so as not to inflict personal injury upon an innocent bystander. We believe the jury's questions, posed to the court after some deliberation, indicated their confusion on these issues presented to them for determination and constituted a request to the trial court for specific guidance as to such issues. We also believe that the trial court's failure after such request to specifically guide the jury with appropriate instructions on these issues resulted in reversible error.

The judgment of nonsuit and the judgment entered upon the jury verdict each is reversed.

Hufstedler, J., and Stephens, J., concurred.