[Civ. No. 18369. First Dist., Div. One. Oct. 13, 1959.]

ANNE M. HOPKINS, Respondent, v. RAYMOND TYE, Appellant.

Campbell, Custer, Warburton & Britton, Walter E. Rankin and George A. Strong for Appellant.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Respondent.

WOOD (Fred B.), J. — Defendant-appellant predicates prejudicial error solely upon the giving of an instruction on waiver of right of way.

The court read to the jury the text of sections 510, 525, 540, subdivision (b), 544, subdivision (b), 546, subdivision (a) and 551 of the Vehicle Code, informing the jury that violation of any of these sections would be negligence *per se*, giving rise to a rebuttable presumption of negligence; and then instructed on waiver of right of way as follows: "A person who has the right-of-way may intentionally waive that right or he may give the appearance of intentionally waiving it. If he conducts himself in such a definite manner as to create a reasonable belief in the mind of another person that the right-of-way has been waived, then such other person is entitled to assume that the right-of-way has been given up to him and he may rely and act upon that assumption until some fact or circumstance leads him to believe to the contrary or would have led an ordinarily prudent person in like position to believe to the contrary."

Defendant criticizes this instruction. He says it is incomplete, that it is based upon BAJI (Civil) Number 150-G, paraphrasing the first two paragraphs of BAJI but omitting the third and last paragraph.* BAJI was derived from a statement appearing in *People* v. *Noland,* 83 Cal.App.2d Supp. 819, 821 [189 P.2d 84], which concluded with a declaration that an intention to relinquish a right of way "will not appear from a mere showing that a pedestrian whose course is likely to intersect that of a vehicle at a crosswalk hesitates, stops, jumps back or does any other act apparently impelled by uncertainty as to the safe course or desire to escape impending danger." (P. 822.) That was simply a statement that such conduct would not furnish a reasonable basis for

---

*The omitted BAJI paragraph reads as follows:

"An intention to relinquish a right of way is not indicated by a mere hesitancy or by appearance of indecision or fear or uncertainty, but only by conduct of a positive character that expresses a decision to waive the right."

an inference that he waived his right of way. It would not add anything fundamental to the instruction which the court gave in this case. It was an added detail or embellishment which defendant should have asked for if he wanted the jury to have it.

■ Defendant makes the additional argument that the declaration above quoted from the Noland opinion required that the jury be told that an intent to relinquish a right of way is indicated "only by conduct of a *positive* character *that expresses a decision* to waive the right." (Emphasis added.) We are not persuaded that such is necessary. Indeed, we doubt if it is entirely appropriate. It suggests that there must be *the actual expression* (by conduct) *of an actual intent* to waive and thus tends to negative the statement (in the instruction given in the instant case) that if one who has the right of way "conducts himself in such a definite manner as to create a reasonable belief in the mind of another person that the right-of-way has been waived, then such other person is entitled to assume that the right-of-way has been given up to him . . ." At any rate, we hold that the instruction given herein was proper and adequate. If defendant wished any refinements made in it he should have submitted them to the trial court, not for the first time to a reviewing court.

■ Defendant also claims that the evidence in this case did not warrant the giving of an instruction concerning waiver of a right of way. We do not agree.

It was a street intersection case. Plaintiff was traveling north and defendant south on the same street. Each stopped for the red light. When it turned green, plaintiff proceeded, making a left turn. She had nearly emerged from the intersection into the cross street when defendant's car hit the right rear fender and bumper of plaintiff's car, the accident occurring in the N.W. quarter of the intersection.

According to plaintiff's testimony, there was a car ahead of her as she approached the intersection. Each car halted for the red light. When it turned to green the car ahead went northerly straight across the intersection. Plaintiff stretched out her arm to signal for a left turn and looked across at the defendant's car. It was not moving, and she saw that the defendant was looking toward the southeast corner of the intersection. Plaintiff then drove forward about one car length up to the crosswalk and stopped again. She still had

her arm stretched out, and she continued to watch the defendant's car. It was still motionless, and the defendant was still looking toward the southeast corner. Plaintiff remained behind the crosswalk for a period of some four to six seconds with her arm outstretched indicating a left turn. At the end of this time the defendant's car had not yet moved. When plaintiff saw that the defendant's car was not moving, she proceeded into the intersection, continuing to watch the defendant. After entering the intersection, plaintiff began to turn to the left, making her turn to the right of a manhole cover situated in the center of the intersection. Before starting to cross the lane in which the defendant's car was located, she stopped once more for four or five seconds to see if his car was moving. It had not moved at all, and the defendant was still looking toward the southeast corner. She then pulled her arm in and proceeded in a westerly direction down the cross street. When she last looked toward the defendant, defendant's car was still stopped. She felt the impact when she had moved forward about one car length from this point. She never saw the defendant's car in motion, and she did not see it when it struck the right rear of her vehicle. When the impact occurred it felt as though the rear of her car was being crushed against the tire, and the bumper was bent around in the opposite direction. Plaintiff's speed at the moment of the collision was about five miles an hour, and she was in second gear. At the time of the collision, the front half of the plaintiff's car was already out of the intersection.

It appears to us that this testimony furnishes adequate support for an implied finding that defendant conducted himself in such a definite manner as to create a reasonable belief in plaintiff's mind that his right of way had been waived and that plaintiff was entitled to assume that the right of way had been given up to her. We certainly can not gainsay that as a matter of law.

We note that this accident occurred in August of 1955, hence prior to the 1957 amendment of section 551 of the Vehicle Code, hence at a time when that section required a driver making a left turn in an intersection to yield to a car "approaching" from the opposite direction, not to a car which (like defendant's) *had* "approached" and stopped. (See *People* v. *Bull*, 144 Cal.App.2d Supp. 860, 862 [301 P.2d 311].) It is conceivable, therefore, that the jury based its verdict upon a finding that plaintiff made a proper left turn by proceeding in the correct lane, giving and obeying all

applicable signals, and exercising the legally prescribed degree of care throughout the process, and not upon the basis of any waiver by the defendant.

We have been shown no ground for reversal.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.