[Civ. No. 26005.   Second Dist., Div. Four.   Apr. 10, 1962.]

In re KAREN LYNNE KIRK, a Person Coming under the Juvenile Court Law.   THE PEOPLE, Respondent, v. KAREN LYNNE KIRK, Appellant.

John H. Kirk, Jr., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Respondent.

BURKE, P. J.—On January 26, 1961, Karen Lynne Kirk, 17 years old, was cited for failure to yield the right of way in making a left turn in violation of section 21801, subdivision (a), of the Vehicle Code. This citation required her appearance in the traffic division of the juvenile court where she denied having violated the law.

On May 15, 1961, a petition was filed in the Los Angeles Superior Court in which the facts of the motor vehicle violation were pleaded. The petition requested that Karen be declared a ward of the juvenile court and that she be dealt with in accordance with the provisions of the Juvenile Court Law. A hearing was held on June 7, 1961, after which the court found the allegations of the petition to be true and sustained the petition. The case was continued six months to the nonappearance calendar to determine whether or not at that time the petition should be dismissed.[1]

On January 26, 1961, Karen was driving eastbound on Holt Boulevard in Pomona, California, and had entered the left

---

[1] It should be noted that these proceedings were conducted under the Juvenile Court Law prior to the reenactment and amendment thereof at the 1961 session of the Legislature. Had it taken place since the amendment no doubt the matter would have been disposed of in accordance with the procedure set up in sections 561-564 of the Welfare and Institutions Code as amended.

turn lane at the intersection of Garey Avenue. As she waited to make the turn two vehicles were approaching in two westbound lanes of Holt Boulevard. Karen started to move her vehicle forward when the light turned green for Holt Boulevard traffic. Of the two approaching vehicles the one closest to the curb was approximately two blocks away and the one in the lane closest to the center of the street was about one block away. Karen moved slowly into the intersection. She crossed over the double white line dividing east and westbound traffic and then stopped in the first lane of westbound traffic. The westbound driver in the first lane then came to a complete stop and motioned for her to proceed to make her left turn. Karen slowly moved ahead into the next lane. When she saw that the car in the lane closest to the curb was not stopping she brought her vehicle to a stop in that lane. The driver of that vehicle first saw Karen's car in the left turn lane before arriving at the intersection; he was traveling about 25 miles an hour; the signal was green for him at the time he entered the intersection; it had turned green about 200 feet before he arrived at the intersection. The second time he noticed Karen's vehicle was when it had crossed into his lane, as it was hidden from his view by the vehicle to his left which had stopped. Being unable to stop, he struck Karen's vehicle. It was raining at the time.

Karen's two principal contentions are that: (1) the trial court misconstrued the term "hazard" as used in Vehicle Code section 21801, subdivision (a); and (2) a finding by a superior court sitting as a juvenile court that a minor committed a violation of the Vehicle Code is a judgment or decree as that term is used in the Welfare and Institutions Code, section 800, from which an appeal can be taken.

The information charged that upon turning left at the particular intersection Karen failed to yield the right of way to a vehicle which had approached or was approaching the intersection from the opposite direction and was so close as to constitute an immediate hazard at any time during the turning movement in violation of Vehicle Code section 21801, subdivision (a). Since its amendment in 1957, this section reads in part: "(a) The driver of a vehicle intending to turn to the left at an intersection shall yield the right-of-way to any vehicle which has approached or is approaching the intersection from the opposite direction and which is so close as to constitute a hazard *at any time during the turning movement*." (Emphasis added.)

The 1957 amendments made no change in subdivision (b) of the section. Before 1957, subdivision (a) [of former § 551] read: ''The driver of a vehicle *within an intersection* intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is *within the intersection or* so close *thereto* as to constitute *an immediate* hazard.'' (We have added emphasis to the words omitted in the 1957 version.)

■ We believe that by the addition in 1957 of the italicized words above, ''at any time during the turning movement,'' the Legislature intended to impose further restrictions upon the operator of a vehicle making a left turn at an intersection. Prior to the amendment he was only required to yield to vehicles approaching from the opposite direction within the intersection or vehicles so close thereto as to constitute an immediate hazard and after having done so his obligation ceased. By the language added in 1957, his obligation to yield was extended to include all vehicles approaching from the opposite direction which are so close as to constitute a hazard at any time during his turning movement.

■ Thus we reason that if the oncoming vehicle in the lane closest to the left turning vehicle surrenders its right of way by indicating to the operator of the left turning vehicle that it desires him to proceed, such operator may not proceed beyond that first lane of traffic, now effectively blocked by the waiving vehicle, if in fact other vehicles approaching in any of the other oncoming lanes will constitute a hazard to the left turning vehicle during the turning movement. ■ If, on the other hand, the left turning vehicle can proceed to complete its turning movement without constituting a hazard to other oncoming vehicles but in the act of doing so its further progress is impeded by pedestrian traffic, or for other reasons beyond the operator's control it is unable to clear the intersection, then oncoming vehicles, under subdivision (b) of section 21801 (formerly § 551), are required to yield the right of way to the driver making the left turn.

Subdivision (b) of section 21801, as amended, reads, ''A driver having so yielded and having given a signal when and as required by this code may turn left and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way.''

By this interpretation of the section full effect is given to what we construe to be the intent of the Legislature when it added the language ''at any time during the turning move-

ment,'' and at the same time retained in the section the quoted language of subdivision (b). We believe the two parts must be read in conjunction with one another and harmonized to arrive at the legislative intent and that this interpretation accomplishes that objective.

Applying these considerations to the facts in the case at bar, when Karen was given the ''go ahead signal'' by the driver in the first lane she still had the obligation to ascertain before proceeding into the next lane if any vehicle which had approached or was approaching from the opposite direction was so close as to constitute a hazard at any time during her turning movement. This, the court found, she did not do, and under such circumstances the court correctly concluded that in proceeding into the next lane she had violated the law. The circumstances would have been different and would have approximated those that were before the court in *Cosby* v. *Rimmell,* 82 Cal.App.2d 415 [186 P.2d 215], had Karen, after ascertaining that the car approaching in the second on-coming lane would not constitute a hazard at any time during the turning movement, proceeded with her turn only to have been forced subsequently to stop in that lane by the presence of pedestrians or for some other reason. In that event she could have then relied upon the shift in the burden to the driver of the oncoming vehicle in the second lane to yield the right of way to her under subdivision (b) of section 21801 of the Vehicle Code.

We approve Karen's contention that she has a right of appeal to this court under the circumstances of this case. Such right of appeal is extended by the provisions of section 580 of the Welfare and Institutions Code. The action of the court in having found that the allegations of the petition were true and having sustained the petition constituted a judgment of the juvenile court under which it assumed jurisdiction and declared such minor to be a ward of the juvenile court.[2]

The judgment is affirmed.

Jefferson, J., and Balthis, J., concurred.

---

[2] Since the reenactment of the Juvenile Court Law by the Statutes of 1961, orders, judgment or decrees of the juvenile court are governed by the provisions of section 800 which likewise extend the right of appeal from a judgment such as the one made by the court in this case.