[Civ. No. 31460.   Second Dist., Div. Five.   Sept. 16, 1968.]

PATRICK L. DONNELLY, Plaintiff and Respondent, v. D. L. PETERSON, as Trustee, etc., et al., Defendants and Appellants.

Newlin, Tackabury & Johnston, Frank R. Johnston and E. Jeffrey Burke for Defendants and Appellants.

Oliver B. Wyman, Jr., Utley & Houck and Alden F. Houck for Plaintiff and Respondent.

KAUS, P. J.—Plaintiff Donnelly recovered a $25,000 judgment from the defendant Alice E. Welles.[1]

## FACTS

The undisputed facts of the accident out of which this litigation arose are these: Plaintiff was westbound on Valley Boulevard; he was riding a motorcycle; the intersection had "left turn slots" in all directions; defendant, who had been

---

[1] Certain other defendants who were admittedly vicariously liable for Mrs. Welles' conduct have also appealed. Since there is no issue concern-

eastbound, was in the process of making a left turn onto New Avenue, a north-south street, when there was a collision between plaintiff's motorcycle and defendant's car; the light for east-west traffic was green; the posted speed limit on Valley Boulevard was 35 miles per hour.

The jury was presented with three versions of the accident: plaintiff's as corroborated by the witness Nelson; defendant's; and, third, that of defendant's witness, Bowman.

*Plaintiff's Version*: Plaintiff was westbound in the center lane driving below the posted speed. Nelson was driving a truck to the right of and behind plaintiff. As they approached the intersection, a Falcon and defendant's Chevrolet, in that order, were waiting to make left turns. After permitting westbound traffic somewhat ahead of plaintiff to clear the intersection, the Falcon completed its left turn. The Chevrolet then moved to the point where the Falcon had been waiting to make its left turn. At that point it "hesitated."[2] Plaintiff knew that the Chevrolet intended to make a left turn. When plaintiff reached the easterly crosswalk "all of a sudden the Chevrolet . . . started to go north." Plaintiff applied his brakes and attempted to swerve around the Chevrolet's rear. He did not quite make it, was thrown off his bike and seriously injured. Neither plaintiff nor Nelson saw any pedestrians in the north crosswalk.

*Defendant's Version*: Defendant was the first car in the left turn slot.[3] She had to wait for the light to turn green. After westbound traffic, which had also been stopped, had cleared the intersection she started her turn. When her car had started to face north but was still within the intersection, she saw plaintiff out of the corner of her eye. She attempted to accelerate but for some reason was unable to do so.

Although defendant looked north, she never saw any pedestrians in the north crosswalk.

*Bowman's Version*: Bowman, too, was on a motorcycle. He was facing south on New Avenue, waiting for the signal at Valley Boulevard to change to green. He saw plaintiff's motorcycle approach from his left. Plaintiff continuously looked at Bowman, who then saw two cars, one behind the

ing their liability, provided that Mrs. Welles is liable, we will make no further mention of them.

[2]Nelson spoke of a "momentary pause."

[3]Her testimony varies from being quite positive on that point, to a concession that there may have been a Falcon ahead of her because "[a]fter you go over something many, many times you can almost believe anything. . . ."

other, start to make a left turn from Valley Boulevard onto New Avenue. Their progress was impeded by two little girls in the north cross walk. Both cars stopped. Plaintiff's cycle then disappeared from Bowman's view, but evidently there was an impact because Bowman saw plaintiff flying through the air.

On appeal defendant contends that plaintiff was contributorily negligent as a matter of law and that it was prejudicial error to refuse certain instructions requested by her.

### CONTRIBUTORY NEGLIGENCE

From plaintiff's and Nelson's testimony it appears that defendant started a left turn, after hesitating, when plaintiff was about sixty feet from the center of the intersection. At a speed of 35 miles an hour—the rough equivalent of fifty-two and one-half feet per second—this gave plaintiff just over one second to take evasive measures.

Regardless of who had the right-of-way,[4] a jury could find that in the exercise of reasonable care plaintiff could interpret defendant's "hesitation" or "momentary pause" as an invitation for him to proceed. When it became apparent that he was mistaken, it was too late. (*Hopkins* v. *Tye,* 174 Cal.App.2d 431 [344 P.2d 640]; *Singer* v. *Bruns,* 60 Cal.App 414 [212 P. 955]; cf. *Almanerz* v. *San Diego Elec. Ry. Co.,* 15 Cal.App.2d 423 [59 P.2d 513].)

Defendant's brief makes an excellent jury argument, based on certain isolated portions of plaintiff's testimony. It is, of course, misplaced in this court.

### INSTRUCTIONS

Defendant submitted two similar instructions based on a dictum in *In re Kirk,* 202 Cal.App.2d 288, 291 [20 Cal. Rptr. 787]. They are virtually identical. We quote the simpler of the two: "If a left turning vehicle can proceed to *complete* its turning movement without constituting a hazard to other oncoming vehicles but in the act of doing so its further progress is impeded by pedestrian traffic, or for other reasons

---

[4]Interpreting section 21801 of the Vehicle Code as it read, before its 1963 amendment, *People* v. *Miller,* 161 Cal.App.2d Supp. 842 [327 P.2d 236] held that neither the oncoming, nor the left turning car acquired a right-of-way ''by succession'' from cars ahead. The 1963 amendment is obviously designed to change this rule in part. It forces the driver intending to turn left to yield to approaching vehicles which may become a hazard during the turning movement and to ''continue to yield the right-of-way to such approaching vehicles until such time as the left turn can be made with reasonable safety.'' This accords with common practice. A fanatic belief in the *Miller* rule always was a sure road to disaster.

beyond the operator's control it is unable to clear the inter-section then oncoming vehicles are required to yield the right of way to the driver making the left turn.'' (Italics added.)

There are several reasons why it was correct to refuse the instruction.

First: the instruction does not make sense. It starts out by assuming that the left turning vehicle can proceed to complete the turning movement, but then goes on to instruct who, as between it and an oncoming vehicle, has the right-of-way if for some reason beyond the driver's control, the left turn cannot be completed after all. Of course, on some reflection, it becomes apparent that the author of the instruction meant to say that if the driver of the left turning vehicle *reasonably believes* that he can complete his turning movement, but can-not, certain consequences follow. Unfortunately that is not what the instruction says.[5]

Second: the instruction, even if properly understood, is too broad. It implies that if the defendant, having properly started her left turn, found her path unexpectedly obstructed and there was a collision with plaintiff, the latter had neces-sarily violated her right-of-way. The situation may be such that the obstruction is just as unexpected to the oncoming driver, who could have reasonably expected the left turning vehicle to have cleared his lane by the time he reaches it. In the case at bar, even if the jury accepted Bowman's evidence of the presence of the pedestrians, it was not compelled to believe that plaintiff, too, should have seen them and antici-pated that defendant would not be able to complete her turn. The truth is that the expectable or unexpectable stopping of a vehicle in the path of a driver does not represent a right-of-way problem at all. Such a problem exists only when—as the jury was instructed at the request of both parties—''two per-sons, *neither of whom then occupies the space in question,* desired to proceed into the same place on the highway. . . .'' (BAJI 150. Italics added.) (*Giles* v. *Happely,* 123 Cal.App.2d 894, 898 [267 P.2d 1051].)[6]

Third: to the extent that the refused instruction focuses on defendant's conduct, defendant got all she needed

[5]Defendant feels that she has demonstrated that the court's alleged error is prejudicial, because at an earlier trial which produced an evenly divided jury, the instruction was given. The point cuts both ways. It is just possible that the first jury was confused by the contradiction inherent in the instruction.

[6]It would have been impossible for a jury to reconcile defendant's proposed instruction with the one from which we have just quoted—an-other possible reason for the earlier mistrial.

when the court instructed the jury as follows: ''The words just quoted from the Vehicle Code, namely, that 'no person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety', do not mean that the driver of a motor vehicle, before making such a turn, must know that there is absolutely no possibility of accident. They mean that before starting to turn a vehicle on a public highway, and while making the turn, the driver of the vehicle must use such precaution as would satisfy a reasonably prudent person, acting under similar circumstances, that the turn can be made safely.''

There was no error, the judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.

