Filed 3/21/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRISHA DRURY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>KATHY RYAN,<br><br>    Defendant and Respondent. | G063080<br><br>(Super. Ct. No. RIC1903877)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Carol A. Greene, Judge. Reversed and remanded.

Ardalan & Associates, P. Christopher Ardalan, Christienne M. Papa; Esner, Chang, Boyer & Murphy, Holly N. Boyer, Shea S. Murphy, and Kevin K. Nguyen for Plaintiff and Appellant.

Ford, Walker, Haggerty & Behar, John K. Paulson, and David J. Mendoza for Defendant and Respondent.

\*          \*          \*

Under California law, negligence is presumed when a defendant violates a statute and thereby causes consequent injury to persons whom the statute was adopted to protect. (See Evid. Code, § 669.) The statute at issue in this case is Vehicle Code section 21801[1], subdivision (a), which requires drivers turning left to "yield the right-of-way to all vehicles approaching from the opposite direction which are close enough to constitute a hazard at any time during the turning movement . . ."

Respondent Kathy Ryan turned left into a parking lot across three lanes of oncoming traffic after drivers in the first two lanes yielded the right-of-way to her. Appellant Trisha Drury, who was in the third lane and had not yielded the right-of-way, collided with Ryan's vehicle just as she was completing the turn.

At the jury trial on Drury's claim for negligence, she requested a negligence per se instruction. The trial court declined. As we shall explain, this was error. Negligence per se instructions in appropriate cases are essential because, without them, the jury lacks a complete understanding of the law. It is insufficient to instruct the jury on a statute or law providing a standard of care without also explaining its significance or how the statute applies to the case the jury must decide. Because the failure to instruct here was prejudicial, we reverse and remand for a new trial.

---

[1] All undesignated statutory references are to the Vehicle Code.

2

## STATEMENT OF FACTS

At about 4:00 p.m. on Friday, August 10, 2018, respondent Kathy Ryan was traveling northbound down Highland Springs Avenue in Beaumont towards a local Food 4 Less grocery store where she wished to run errands. She pulled into a left turn pocket on Highland Springs Avenue in order to turn into the grocery store parking lot. She stopped in the left turn pocket, waiting for oncoming traffic to clear. Ryan was very familiar with this turn and with the intersection, as she had made the turn many times before.

The southbound lane of Highland Springs Avenue had three lanes of traffic. There were no traffic lights or stop signs where the left turn pocket was located, requiring drivers to make the turn unprotected. Ryan saw there were cars in the opposite lanes. In the first southbound lane, the one closest to the center of the road, Ryan said she saw the traffic had essentially stopped for her. In the second southbound lane, the middle lane, she said there were also some cars stopped.[2] She said the drivers of the cars in those lanes were gesturing to her, indicating she could turn.

Ryan testified that she could see clearly into the third southbound lane, the one closest to her destination, even though the first two lanes had cars in them. She did not see any cars approaching in the third lane. She turned without stopping across all three lanes of traffic.

At that moment, appellant Trisha Drury was on her way back to her home in Carson. She had taken her daughters to visit her father at his

---

[2] The exact amount of traffic in the second lane was unclear. She had testified at her deposition that there were cars "backed up" in both the first and second southbound lanes. At trial, however, she testified there were "one or two" cars. We thus presume her recollection was there was at least one car, and perhaps more than one, in that lane.

home in Banning, and was getting ready to take the on-ramp onto the freeway off Highland Springs Avenue when she saw Ryan's car suddenly appear in front of her. She stepped on her brakes and veered a bit to the right, but, she said, she could not avoid colliding with the rear end of Ryan's car. Ryan testified that she felt a bump.

Drury was able to drive the car home, but claims she developed severe pain and lack of mobility in her arm and neck over the succeeding months.

PROCEDURAL HISTORY

Drury filed suit for motor vehicle negligence against Ryan on July 12, 2019. Ryan filed her answer on August 19, 2019. The case was tried to a jury over a period of approximately ten days in late 2022. On the final day of trial itself, November 10, 2022, the jury returned a verdict in favor of Ryan. Specifically, on the special verdict form, the jury found Ryan had not been negligent. No further questions on the form were answered. The court entered judgment on November 30, 2022.

Drury timely filed a notice of intent to move for new trial on January 4, 2023, and filed a memorandum of points and authorities in support of the motion on January 17, 2023. Amongst other things, Drury

argued the trial court erred by refusing to make a negligence per se instruction under CACI No. 418.[3] The trial court denied the motion.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

Drury raises four grounds for appeal. First, she argues the trial court's refusal to instruct on CACI No. 418 was reversible error. Second, she contends the jury's finding of no negligence is unsupported by the evidence. Third, she asserts defense counsel made so-called "golden rule" arguments during closing, improperly imploring jurors to put themselves in Ryan's position. Finally, she claims one of the jurors engaged in misconduct by injecting his own personal experience with the intersection in question. Because we agree with Drury on her first argument and remand for a new trial, we need not address her other three arguments.

A claim of "[i]nstructional error is subject to a de novo standard of review. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581, 584.) It is primarily a legal inquiry in which we need not give deference to the trial court's decision. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) 'Where it is

---

[3] CACI No. 418 on presumption of negligence per se states: "If [plaintiff . . .] proves 1. That [. . . defendant. . .] . . . violated this law and 2. That the violation was a substantial factor in bringing about the harm, then you must find that [ . . . defendant. . .] was negligent [unless you also find that the violation was excused]. If you find that [ . . . defendant. . .] did not violate this law or that the violation was not a substantial factor in bringing about the harm [or if you find the violation was excused], then you must still decide whether [ . . .defendant. . .] was negligent in light of the other instructions." The directions for use accompanying the instruction state that the bracketed portions surrounding potential excuse should be given "[i]f a rebuttal is offered on the ground that the violation was excused. . ."

contended that the trial judge gave an erroneous instruction,' we must 'view the evidence in the light most favorable to the claim of instructional error.'" (*Suffolk Construction Co., Inc. v. Los Angeles Unified School Dist.* (2023) 90 Cal.App.5th 849, 869–870.) "However, instructional error in a civil case is not grounds for reversal unless it is probable the error prejudicially affected the verdict. [(*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 (*Soule*).)] In determining whether instructional error was prejudicial, a reviewing court must evaluate '(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.' (*Id.* at pp. 580–581.)" (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1217.)

## II.
### THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY REFUSING TO INSTRUCT JURORS ON NEGLIGENCE PER SE BECAUSE THERE WAS SUFFICIENT EVIDENCE INDICATING RYAN HAD VIOLATED SECTION 21801

Each driver on the roadway is "under a duty, both by statute and common law, to operate his vehicle without negligence so as to abstain from injuring any other person or his property." (*Bewley v. Riggs* (1968) 262 Cal.App.2d 188, 194.) Under Evidence Code section 669, negligence is presumed where the following elements are met: (1) the defendant violated a statute, (2) the violation proximately caused injury to a person or property, (3) the injury resulted from an occurrence of a type the statute was designed to prevent, and (4) the person suffering injury was one of the class of persons for whose protection the statute was adopted. (*Id.* at subd. (a)(1)–(4).) The first two elements are questions of fact for the jury, but the second two elements are issues of law for the court. (See *Norman v. Life Care Centers of America, Inc.* (2003) 107 Cal.App.4th 1233, 1247 (*Norman*).) The defendant may rebut the presumption of negligence per se by presenting evidence that

6

she "did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." (Evid. Code, § 669, subd. (b)(1).)

CACI No. 418, which Drury requested and to which Ryan objected, embodies the negligence per se presumption. The trial court sustained Ryan's objection and instead instructed the jury on the basic reasonable person standard of care, as well as section 21801. In its ruling on Drury's motion for new trial, the court reasoned it was not appropriate to instruct the jury on CACI No. 418 because section 21801 "has a reasonable component that is in line with the negligence instruction," and, in any event, the failure to instruct did not prejudice Drury.

## A. *The Failure to Instruct On CACI No. 418 Was Error*

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule, supra,* 8 Cal.4th at p. 572.) "Because many general jury instructions are inadequate, Courts of Appeal have consistently held, 'A trial court should not require a party to rely on abstract generalities in presenting its legal theory of the case to the jury, but should instruct the jury on vital issues in terms that relate to the particular case before it. [Citations.]' (*Self v. General Motors Corp.* (1974) 42 Cal.App.3d 1, 10.) Therefore, giving an instruction embodying a general rule does not justify refusing a more specific instruction applying the rule to the particular circumstances of the case." (*Sesler v. Ghumman* (1990) 219 Cal.App.3d 218, 225 (*Sesler*).) A party is entitled to an instruction on her theory of the case if the evidence, viewed in the light most favorable to giving the instruction, could establish the elements of the party's theory. (See *Norman*, *supra*, 107 Cal.App.4th at 1242.)

7

*Sesler*, decided by a different panel of this court, is almost identical to the present case.[4] There, the plaintiff was also attempting an unprotected left hand turn across three lanes of traffic. (*Sesler, supra,* 219 Cal.App.3d at p. 221.) He too was allegedly motioned across by drivers in the first two lanes, but he did not see any cars in the third lane. (*Ibid.*) Like Ryan, he made his turn without stopping. (*Id.* at pp. 221–222.) At trial, the court instructed the jury on section 21801. However, it refused to give a tailored instruction which would have clarified that, even if a driver is given the right of way by one lane of oncoming traffic, he must still check other lanes before proceeding. (*Id.* at p. 222.) This proposed instruction was predicated on the case of *In re Kirk* (1962) 202 Cal.App.2d 288 (*Kirk*), in which it was held "that if the oncoming vehicle in the lane closest to the left turning vehicle surrenders its right of way by indicating to the operator of the left turning vehicle that it desires him to proceed, such operator may not proceed beyond that first lane of traffic, now effectively blocked by the waiving vehicle, if in fact other vehicles approaching in any of the other oncoming lanes will constitute a hazard to the left turning vehicle during the turning movement." (*Id.* at p. 291.)[5] The trial court in *Sesler* refused to give the tailored instruction because it reasoned BAJI No. 5.21 adequately covered

---

[4] Ryan failed to mention or address *Sesler* in her brief.

[5] Ryan failed to mention or address *Kirk* in her brief as well.

8

the instruction's content.[6] Jurors submitted a question to the court as to whether the left-turning vehicle must give right of way to the entire intersection or one lane at a time. (*Sesler, supra,* at p. 226.) The trial court still refused to give the proposed instruction. (*Id.* at pp. 226–227.)

The *Sesler* court held this was prejudicial error because the proposed instruction accurately restated the holding of *Kirk*, was pertinent to the facts of the case, and likely would have clarified a crucial issue for the jury. BAJI No. 5.21, on the other hand, only defined and clarified the phrase "so close as to constitute a hazard" as stated in section 21801. It did not address the duty of a driver turning left when oncoming motorists have yielded the right of way. (*Sesler, supra*, 219 Cal.App.3d at p. 225.)

Here, Drury argues a negligence per se instruction was proper because there was sufficient evidence that Ryan had violated section 21801. She is correct. At a minimum, the evidence indicated Ryan never stopped while making the left hand turn, even though only the cars in the first and second southbound lanes had stopped to allow her to pass. According to the *Kirk* rule, she was bound to stop so she could check the third lane before proceeding to complete her turn. The evidence indicates she did not. Ryan's own accident reconstruction expert, Daniel Voss, testified that, according to his analysis, Ryan was traveling at approximately 20 miles per hour at the time of impact, in contrast to Drury's nine miles per hour. As calculated by

---

[6] Specifically, BAJI No. 5.21 as instructed stated: "'A vehicle is so close as to constitute a hazard to another vehicle headed in the opposite direction and intending to turn left at an intersection whenever a reasonable person in the position of the driver intending to turn left would realize that the two vehicles would probably collide at some time during the turning movement if he did not yield the right of way.'" (*Sesler, supra*, 219 Cal.App.3d at p. 225.)

9

her own expert, Ryan's actual speed, we note, was significantly faster than what she herself testified to, both at trial and in her deposition testimony.[7] It would have been impossible for Ryan to attain a 20 mile-per-hour speed if she had stopped to check the third lane before crossing it. Her failure to stop established she did not check the third lane, which is a violation of section 21801 under *Kirk*. Thus, the trial court should have instructed the jury on negligence per se based on this violation. The failure to do so was error.

Ryan argues that the instruction was not necessary because section 21801 incorporates a reasonable person standard. (See *Washam v. Peerless Automatic Staple Mach. Co.* (1941) 45 Cal.App.2d 174, 178 [interpreting the predecessor statute, section 551].) Thus, she claims, Drury's desired legal point was adequately covered by the court's instructions on section 21801 and the reasonable person standard. Ryan relies in large part on *Spriesterbach v. Holland* (2013) 215 Cal.App.4th 255 (*Spriesterbach*) for this argument.

In *Spriesterbach*, a bicyclist riding on a sidewalk collided with a car as it exited a parking lot. (*Spriesterbach, supra,* 215 Cal.App.4th at p. 259.) The parking lot was located right next to a wall and hedge. While the bicyclist saw the defendant's vehicle waiting to exit the parking lot, he thought the defendant had seen him when she had not. She began inching forward to see beyond the wall, at which time the bicyclist rode in front of her car and she clipped his pedal. (*Id.* at pp. 260–261.) At trial on his claim for negligence, the bicyclist sought a negligence per se instruction because he

---

[7] At trial, Ryan testified she took the turn at five to seven miles per hour, but was confronted with her deposition, in which she said she was traveling at three to five miles per hour.

alleged the motorist violated section 21804 by failing to yield the right-of-way to him.[8] (*Spriesterbach,* at p. 263.) The trial court refused the bicyclist's proposal and instructed only on the reasonable person standard of care as well as the content of section 21804. (*Spriesterbach,* at p. 267.) The appellate court found any instructional error was not prejudicial because the jury necessarily had to have found defendant did not fail to use reasonable care in order to render the verdict in her favor. Thus, the court reasoned, even if the jury had been instructed on negligence per se, it would still have found defendant did not violate section 21804. (*Spriesterbach,* at p. 268.)

*Spriesterbach* is distinguishable because there, the trial court lacked sufficient evidence that the defendant had violated section 21804. Instead, the evidence indicated defendant had stopped at the entrance to the parking lot waiting to enter the roadway. And her view of the sidewalk was impeded by the hedge and wall next to the supermarket. She was attempting to see beyond it to check for traffic in order to yield right-of-way. In contrast, the evidence here indicates Ryan had not stopped to yield right-of-way to the third lane of oncoming traffic.

We further note that the reasonable person standard of care is the baseline standard for a negligence case. However, where there are statutes that explicitly spell out the standard of care for a given situation, a

---

[8] Section 21804 is similar in language to section 21801, except it applies to drivers attempting to enter a roadway from public or private property: "The driver of any vehicle about to enter or cross a highway from any public or private property, or from an alley, shall yield the right-of-way to all traffic, as defined in Section 620, approaching on the highway close enough to constitute an immediate hazard, and shall continue to yield the right-of-way to that traffic until he or she can proceed with reasonable safety." (§ 21804, subd. (a).)

11

negligence per se instruction is warranted–if there is sufficient evidence that the statute has been violated. Sections 21804 and 21801, for instance, define how a person exercises reasonable care when entering a roadway, or when turning left. Providing the jury with the contents of these statutes alone does not adequately elucidate how the statutes pertain to the analysis the jury must undertake. Jurors will know what the statute says, but not its significance or how it applies to the case they must decide. Jurors here were told only what section 21801 said–not what they should *do* with it. A negligence per se instruction, where appropriate, provides the needed linkage and ensures the plaintiff gets the benefit of the negligence per se presumption.

As stated in *Norman*, and as Ryan conceded in her brief, an instruction on negligence per se is warranted when there is sufficient evidence for the jury to conclude a statute supplying a standard of care has been violated. Such evidence was present here.

*B.  The Lack of Instruction on Negligence Per Se Likely Misled the Jury and was Therefore Prejudicial*

An instructional error is prejudicial when it is reasonably probable that the appellant would have gotten a more favorable result in its absence. (See *Soule, supra*, 8 Cal.4th at p. 570.) "While there is no precise formula for measuring the effect of an erroneous instruction [citation], a number of factors are considered in measuring prejudice: (1) the degree of conflict in the evidence on critical issues (see *Robinson v. Cable* [(1961)] 55 Cal.2d [425,] 428; *Maertins v. Kaiser Foundation* Hospitals [(1958)] 162 Cal.App.2d [661,] 667); (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect (see *Clark v. Di Prima* [(1966)] 241 Cal.App.2d 823); (3) whether the jury requested a rereading of

the erroneous instruction (see *Krouse v. Graham* [(1977)] 19 Cal.3d [59,] 72) or of related evidence (see *Rimmele v. Northridge Hosp. Foundation* (1975) 46 Cal.App.3d 123, 131); (4) the closeness of the jury's verdict (see *Robinson v. Cable*, *supra*, [] at p. 428); and (5) the effect of other instructions in remedying the error (compare *Wells v. Lloyd* (1942) 21 Cal.2d 452, 458–459 with *Krouse v. Graham*, *supra*, [] at p. 73)." (*LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 876.)

Ryan's closing argument could have had the effect of misleading the jury because it focused the jury on the reasonable person standard. Ryan's counsel said that Ryan's liability for negligence was posited on whether or not she failed to use reasonable care; and that the jury was tasked with deciding whether Ryan's actions "were reasonable or not" using the perspective of a reasonable person in her position. It was thus reasonably probable Drury would have gotten a different result had the negligence per se instruction been given because it could have changed the jury's thinking on what was ultimately the central question in the case. The error was reversible.

DISPOSITION

The judgment is reversed and the matter remanded for a new trial. Appellant to recover her costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

GOODING, J.

SCOTT, J.